**IN THE UNITED STATES OF DISTRICT COURT**
**DISTRICT OF MARYLAND**
**(Southern Division)**

| | |
|---|---|
| **Evergreen ATM, LLC d/b/a GetCoins** ) | |
| 912 Marshall Avenue, STE 902 ) | |
| Laurel, MD 20707 ) | |
| *Plaintiff,* ) | |
| ) | |
| ) | Case No. 8:23-cv-02758 |
| v. ) | |
| ) | |
| Andrew Ryabchenko  a/k/a Andrey Ryabchenko ) | |
| 2126 Benson Avenue, Unit 2E ) | |
| Brooklyn, NY 11214 ) | |
| ) | |
| *Defendant.* ) | |

## COMPLAINT

Plaintiff, Evergreen ATM, LLC doing business as "GetCoins" ("Plaintiff" or GetCoins"), by and through undersigned counsel, files this Complaint against Andrew Ryabchenko ("Defendant") and states as follows:

### I.      PARTIES

1.      GetCoins is a registered Nevada limited liability company licensed to do business in Maryland with its principal place of business located at 312 Marshall Avenue, Suite 902, Laurel, Maryland 20707.

2.      Andrew Ryabchenko is a former employee of GetCoins, at the time residing in Maryland, and a current resident of 492 Howard Avenue, 1B, Staten Island, New York, 10301.

### II.      JURISDICTION

3.      This court has jurisdiction over the subject matter of this complaint pursuant to 28 U.S.C. § 1331, because the action arises under the laws of the United States of America, namely,

the Defend Trade Secrets Act of 2016, 18 U.S.C. § 1832 *et seq.*, and the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 *et seq*.

4.      This court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1338(b) because those claims are joined with substantial and related claims under federal law. This court also has subject matter jurisdiction over those claims pursuant to 28 U.S.C. § 1367 because those claims are interrelated with Plaintiff's federal claims and arise from a common nucleus of operative facts such that adjudication of Plaintiff's state law claims with Plaintiff's federal claims furthers the interest of judicial economy.

5.      Venue in this district and division is appropriate pursuant to 28 U.S.C. § 1391 because Defendant had significant and deliberate contacts with this district and division and because it is where the substantial majority of events giving rise to these claims occurred.

### III.      FACTUAL BACKGROUND AND DEFENDANT'S WRONGFUL CONDUCT

6.      GetCoins operates an over-the-counter online cryptocurrency exchange whereby customers purchase, sell, or exchange various forms of cryptocurrency. GetCoins operates a national network of cryptocurrency automated teller machines ("ATM") where GetCoins leases a small square footage from a convenience store or gas station ("Vendors") to place a GetCoins ATM for profit. GetCoins enters into lease agreements with its Vendors but GetCoins owns the ATMs.

7.      GetCoins provides these services in twenty-eight states and employs a number of employees, contractors and technicians for its ATM operations.

8.      As part of GetCoins' operations, it often relocates underperforming ATMs and stores the ATMs in storage lockers owned by ExtraSpace Storage, Inc. ("ExtraSpace") lockers in several states.

9.      Also integral to GetCoins' operations is the use of its Vendor Dashboard (the "Dashboard"). The Dashboard contains Vendor contact information, including email addresses, physical addresses for ATM locations, and price points for the leasing agreements with each Vendor. The information contained in the Dashboard is not publicly available or obtainable through an independent source and is instead password protected and only select GetCoins employees have access to the Dashboard. The information contained in the Dashboard is vital to GetCoins remaining competitive in the industry, as distribution of the information in the Dashboard would allow a competitor to isolate the names and locations of GetCoins' Vendors and determine the exact value necessary to undercut GetCoins' prices.

10.      GetCoins' operations also require the frequent maintenance of its various ATMs throughout the country. To expedite the efficient repair and maintenance of its ATMs, GetCoins uses Remote Access Software ("RAS"). RAS allows businesses such as GetCoins to remotely monitor as well as manage ATMs without the need for visiting each ATM in person. The RAS has the capability to reset the ATMs that GetCoins operates in twenty-eight states or to take them completely offline via the RAS' connection to the internet. GetCoins' RAS was a restricted database that was password protected, and access to the RAS was limited to select GetCoins employees, namely, Defendant and GetCoins' Chief Executive Officer, John Andriy Simonyan.

**A.** ***Defendant and GetCoins Entered into a Confidentiality, Non-Solicitation, and Return of Property Agreement.***

11.      Between January 21, 2021, to August 15, 2023, Defendant was employed by GetCoins as an Operations Manager in Maryland. In this position, Defendant had access to GetCoins' confidential and proprietary information, including all information contained in the Dashboard. Defendant's employment was governed in part by a Customer and Employee Non-Solicitation and Confidentiality Agreement (the "Agreement"), attached hereto as **Exhibit A**.

12.     The Agreement defines GetCoins' Confidential Information to include:

> . . . any and all confidential and/or proprietary knowledge, data, or information. By way of illustration and not limitation, Confidential and Proprietary Information, Confidential and Proprietary Information includes tangible and intangible information relating to formulations, products, processes, know-how, designs, formulas, methods, developmental or experimental work, data, drawings, worksheets, blueprints, concepts, samples, inventions, improvements, discoveries, research, marketing plans, business plans, budgets, unpublished financial statements, licenses, technology functions, vendor names and services provided, prices, costs, prospective and existing kiosk locations, planned expansion information, compliance thresholds, suppliers, customers and personnel All Confidential and Proprietary Information owned, developed, or acquired by the Company shall remain the sole and exclusive property of the Company. Confidential and Proprietary Information also includes any information described above that the Company obtains from its clients or any other third party and that the Company treats as confidential, whether or not owned or developed by the Company.

13.     Under the terms of the Agreement, Defendant expressly agreed to maintain the confidentiality of GetCoins' Confidential and Proprietary Information, specifically, the Agreement states that Defendant "[a]t all times during and after the Employee's employment with the Company, [Defendant] will hold in strictest confidence and will not disclose, disseminate, use, lecture upon, or publish any of the Company's Confidential and Proprietary Information (defined in Section 2 above). . . ."

14.     The Agreement requires that Defendant return all GetCoins property, and states that upon termination:

> Employee will promptly (i) deliver to the Company any and all drawings, notes, memoranda, specifications, devices, formulas, and documents, together with all copies thereof, and any other material (whether in hard copy, digitally stored, or in any other format or medium) containing or disclosing any Confidential and Proprietary Information of the Company (and will cooperate with the Company to ensure that no electronic copies thereof have been retained in or are retrievable from any personal property not belonging to the

Company), and (ii) return all Company property issued to Employee or otherwise in Employee's possession or control, including, without limitation, computers and computer equipment, phones and other mobile devices, and digital storage devices . . .

15.     The Agreement includes a customer non-solicitation provision which states that Defendant "shall not, whether directly or indirectly, undertake any act with the intent to disrupt, impair, or interfere with the business of the Company in any way, whether by way of interfering with or disrupting its relationships with customers, agents, representatives, contractors, suppliers, or otherwise."

16.     Defendant breached each of these provisions of the Agreement.

**B.  *Defendant Stole Hundreds of Thousands of Dollars of GetCoins' Property.***

17.     As part of Defendant's responsibilities as Operations Manager, Defendant was responsible for managing the logistics of removing, storing, and installing ATMs.

18.     Defendant was required to manage leases for storage units with ExtraSpace for ATMs that needed to be stored before placing them with Vendors.

19.     Unbeknownst to GetCoins, rather than securing leases in GetCoins' name, Defendant entered into the leases in his own name.

20.     Despite entering into leases with ExtraSpace in his own name, Defendant used GetCoins' corporate credit card to pay for the cost of the leases.

21.     On August 15, 2023, Defendant was terminated from his position for poor performance.

22.     That day, during his termination meeting, Defendant said to Mr. Simonyan, that he had "certain leverages" against GetCoins and would capitalize on these "leverages" unless GetCoins paid him the ransom demanded.

23.     Defendant then revealed to Mr. Simonyan for the first time that he had entered into each lease with ExtraSpace in his own name, and would keep GetCoins' ATMs unless GetCoins bowed to his demands.

24.     GetCoins refused to bend to Defendant's ultimatum and demanded the return of its property.

25.     Defendant then left GetCoins office with all of GetCoins' ATM keys.

26.     In response to Defendant's theft of GetCoins' property, on or about August 28, 2023, GetCoins technicians were deployed to ExtraSpace facilities to move GetCoins' ATMs.

27.     Upon arrival, GetCoins discovered that Defendant asked ExtraSpace to change the locks to prevent GetCoins' access to the ATMs effectively holding GetCoins' ATMs hostage.

28.     Weeks later, after Defendant realized that GetCoins would not pay him for access to ATMs that were GetCoins' property, Defendant threatened that to cease all communication with ExtraSpace after terminating the leases, which would result in the destruction, abandonment, or sale of all of GetCoins' property held in the storage lockers.

29.     Defendant entered into lease agreements with ExtraSpace on behalf of GetCoins but in his own name for over a dozen leases throughout the country.  In those facilities, there are fifty-eight ATMs stored.

30.     The market value for each ATM is $7,435.

31.     The value of the property Defendant stole is $431,230.

**C.  *Defendant Stole GetCoins Confidential and Trade Secret Information to Attack GetCoins' Operations.***

32.     As GetCoins' Operations Manager, Defendant had unique access to GetCoins' Dashboard.

33.     Accordingly, following Defendant's termination, GetCoins revoked Defendant's access to the Dashboard.

34.     However, on or about August 29, 2023, Mr. Simonyan received an email from p.griffin@internet.ru, which carbon copied Vendors from GetCoins' Dashboard and wrote the following:

> Dear Store Owner,
>
> I hope you're well. It's unacceptable that the GetCoins Bitcoin ATM company has failed to pay you multiple rents. GetCoins did this to hundreds of stores in the past and was never held accountable for their actions. You have strong legal options to get your money back. Do not hesitate to file a law suit. You have 100% chance of winning. File law suit against the GetCoins CEO personally as well as against the company. You just need to get to your local court to do so.
>
> The company may choose to settle and pay you everything they owe to avoid public embarrassment through a court case.
>
> If you decide not to bother going to court, consider to leave Google review to one of the company's local locations to spread the word about GetCoin's disgraceful conduct.
>
> **What You Need:**
> Your signed contract with them
> Any records of missed payments
> Any messages where they admit they owe you
> Any proof of how this has cost you money or stress
>
> **Company Information:**
>  Evergreen ATM LLC dba Getcoins
> 902 Marshall Ave Suite 902, Laurel, MD 20707
>
> Company's CEO (Person who decided to screw you):
> John Andriy Simonyan – (443) 813 4964
> 05/30/1997
>
> Reach out to me with any questions. I'm here to help.

35.     The email inexplicably included a photograph of Mr. Simonyan's driver's license.

36.    The Vendors copied on the email would only be identifiable by an individual with current or prior access to the Dashboard.

37.    Defendant is a Russian speaker and the only current or former employee that had access to the Dashboard that speaks Russian.

38.    The "Internet.ru" domain name is a Russian domain name and email address, exclusively available in the Russian language.

39.    Upon information and belief, Defendant used the pseudonym p.griffin@internet.ru to contact GetCoins' Vendors using the information obtained and copied through the Dashboard prior to Defendant's termination.

40.    After Defendant emailed GetCoins' Vendors, GetCoins Vendors have inquired as to the contents and allegations in Defendant's August 29, 2023, email.

41.    Since August 29, 2023, Defendant continues to periodically send emails to GetCoins' Vendors encouraging them to file a lawsuit against GetCoins.

**D.  *Defendant Engaged in a Cyber Attack of GetCoins' Systems to Disrupt GetCoins' Operations.***

42.    Following Defendant's termination, Defendant's access to GetCoins' RAS was terminated.

43.    Nevertheless, on August 31, 2023, approximately fifty fully functioning ATMs were taken offline by the RAS.

44.     Because the ATMs were taken offline completely by the RAS, GetCoins was required to hire technicians to physically go to each location and reset the ATM and turn the connection to the internet back on so that the ATM could begin operating again.

45.    When the ATMs affected by the RAS were offline, they could not generate revenue.

46.     Following the shutdown of GetCoins' ATMs by the RAS, GetCoins investigated the source of the shutdown.

47.     GetCoins ultimately determined the source of the breach by way of review of the internet protocol address ("IP"), which is an identifying number associated with a specific computer or computer network, that accessed and commanded the RAS.

48.     GetCoins' investigation determined that the source of the breach the IP address at 173.68.196.192, which was located at New York City, New York, Latitude 40.7132, Longitude -74.0061—Defendant's current location.

49.     Only Defendant and Mr. Simonyan had the credentials to command the RAS.

50.     Upon information and belief, Defendant infiltrated GetCoins' RAS and shutdown the ATMs using the RAS to further disrupt GetCoins' operations.

**E.  *Defendant Failed to Return GetCoins' Intellectual and Physical Property.***

51.     As part of GetCoins' operations, it becomes necessary that technicians document information concerning the functioning of the ATMs.

52.     During the course of Defendant's employment with GetCoins, Defendant created software that was used by technicians to efficiently document the information on each ATM, making it easier to troubleshoot potential issues with the ATM.

53.     The information documented by the technician in the software would then be uploaded to a cloud-based data storage center.

54.     Following Defendant's termination, Defendant reverted the credentials for the cloud-based data storage to upload to his personal cloud-based data storage center, rather than one that was owned and operated by GetCoins, effectively depriving GetCoins of the data storage necessary for its operations.

55.     In addition to this stolen information, Defendant likewise stole all of the physical keys to GetCoins' ATMs. As such, with the stolen Dashboard information and keys, Defendant has the capability to approach any GetCoins ATM and illegally open and remove cash from the ATM.

## COUNT I
## Misappropriation of Trade Secrets
## In Violation of Defend Trade Secrets Act of 2016
## 18 U.S.C. § 1831 *et seq.*

56.     GetCoins incorporates and realleges the allegations in the foregoing paragraphs as though alleged fully herein.

57.     GetCoins is the owner of proprietary information, certain of which information constitutes trade secrets within the meaning of 18 U.S.C. § 1839(3), including the information contained within the Dashboard.

58.     GetCoins has taken reasonable measures to safeguard its trade secrets, including the use of confidentiality agreements in employment contracts and password protection.

59.     GetCoins' trade secrets derive independent economic value from not being generally known to and not being readily ascertainable through proper means by another person who can obtain economic value from the disclosure or use of the information, including by undercutting GetCoins' lease agreements with its Vendors via the pricing data contained in the Dashboard.

60.     Defendant misappropriated GetCoins' trade secrets to disrupt GetCoins' operations in an effort to extract payment from GetCoins.

61.     In particular, Defendant acquired GetCoins' trade secrets by improper means and also used GetCoins' trade secrets while knowing that the secrets were improperly acquired and acquired under circumstances giving rise to a duty to maintain the secrecy of the trade secrets.

62.    Defendant acquired GetCoins trade secrets by surreptitiously removing that information from GetCoins' Dashboard while knowing that the trade secrets were acquired by improper means.

63.    GetCoins' trade secrets are related to services used in interstate commerce. GetCoins operates in in twenty-eight states, including Maryland. The Dashboard contains trade secret information for each of the states where GetCoins operates.

64.    Defendant's misappropriation of GetCoins' confidential and trade secret information was willful and malicious because Defendant used that confidential and trade secret information to contact GetCoins' Vendors to disrupt, impair, or interfere with GetCoins' relationship with those Vendors in conscious disregard of GetCoins' rights.

### COUNT II
### Misappropriation of Trade Secrets
### In Violation of the Maryland Uniform Defend Trade Secrets Act
### Md. Code Ann., Com. Law § 11-1201 *et seq*.

65.    GetCoins incorporates and realleges the allegations in the foregoing paragraphs as though alleged fully herein.

66.    GetCoins is the owner of proprietary information, including information, certain of which information constitutes trade secrets within the meaning of Md. Code Ann., Com. Law § 11-1201(e), including the information contained within the Dashboard.

67.    GetCoins has taken reasonable measures to safeguard its trade secrets, including the use of confidentiality agreements in employment contracts and password protection.

68.    GetCoins' trade secrets derive independent economic value from not being generally known to and not being readily ascertainable through proper means by another person who can obtain economic value from the disclosure or use of the information, including by

undercutting GetCoins' lease agreements with its Vendors via the pricing data contained in the Dashboard.

69.     Defendant misappropriated GetCoins' trade secrets to disrupt GetCoins' operations in an effort to extract payment from GetCoins.

70.     In particular, Defendant acquired GetCoins' trade secrets by improper means and also used GetCoins' trade secrets while knowing that the secrets were improperly acquired and acquired under circumstances giving rise to a duty to maintain the secrecy of the trade secrets.

71.     Defendant acquired GetCoins' trade secrets by surreptitiously removing that information from GetCoins' Dashboard while knowing that the trade secrets were acquired by improper means.

72.     Defendant's misappropriation of GetCoins' confidential and trade secret information was willful and malicious because Defendant used that confidential and trade secret information to contact GetCoins' Vendors in an effort to disrupt, impair, or interfere with GetCoins' relationship with those Vendors in conscious disregard of GetCoins' rights.

**COUNT III**
**Violation of the Computer Fraud and Abuse Act**
**18 U.S.C. § 1030 *et seq.***

73.     GetCoins incorporates and realleges the allegations in the foregoing paragraphs as though alleged fully herein.

74.     GetCoins' RAS was a protected computer in that it was a restricted database, connected to the internet, and used in interstate commerce.

75.     Defendant knowingly, intentionally, and without authorization commanded the RAS to take approximately fifty fully functioning ATMs offline.

76.     Defendant intentionally accessed the RAS without authorization and, because of his command to the RAS to take approximately fifty fully functioning ATMs offline, recklessly caused damaged and caused loss to GetCoins.

77.     GetCoins has been harmed in an amount exceeding $5,000 by Defendant for the unauthorized use of the RAS.

**COUNT IV**
**Breach of Contract**

78.     GetCoins incorporates and realleges the allegations in the foregoing paragraphs as though alleged fully herein.

79.     GetCoins and Defendant are parties to the Agreement, which is a contract.

80.     Defendant breached the confidentiality provisions in the contract by using GetCoins' confidential and trade secret information, including information contained in the Dashboard to contact GetCoins' Vendors to disrupt, impair, or interfere with GetCoins' relationship with those Vendors.

81.     Defendant breached the customer non-solicitation provisions in the contract by using GetCoins' confidential and trade secret information, including information contained in the Dashboard to contact GetCoins' Vendors to disrupt, impair, or interfere with GetCoins' relationship with those Vendors, namely, encouraging those Vendors to file suit against GetCoins.

82.     Defendant breached the return of property provisions in the contract by failing to promptly deliver to GetCoins after his termination, the software and information developed during Defendant's employment, the GetCoins property issued to Defendant, including the ATM keys and the ATMs themselves, which are GetCoins property.

83.     Defendant's breaches have proximately caused GetCoins to suffer damages. GetCoins has been damaged by having to incur attorney's fees and costs to remedy the risk to its

information caused by Defendant's breaches. GetCoins also has been damaged by having to devote employee time and undertake investigations and Information Technology examinations to mitigate the risks posed by Defendant's breaches.

## COUNT V
### Detinue
### Md. Rule 12-602 *et seq.*

84.    GetCoins incorporates and realleges the allegations in the foregoing paragraphs as though alleged fully herein.

85.    Defendant unjustly detained and acquired possession of fifty-eight ATMs totaling $431,230 in unlawfully obtained property.

86.    Defendant unjustly detained the property when he, as a GetCoins' employee, secured leases for the ExtraSpace storage under his own name, rather than under GetCoins' name, causing GetCoins to unwittingly place fifty-eight ATMs in ExtraSpace units in leases under Defendant's name instead of GetCoins' name.

87.    Upon Defendant's termination, GetCoins demanded the return of the fifty-eight ATMs and Defendant refused to return GetCoins' property. Defendant failed to comply with GetCoins' demand.

## COUNT VI
### Conversion

88.    GetCoins incorporates and realleges the allegations in the foregoing paragraphs as though alleged fully herein.

89.    GetCoins operates a national network of ATMs, owns the ATMs, and only leases a small square footage from a Vendor to place an ATM for profit. GetCoins relocated fifty-eight underperforming ATMs to ExtraSpace units in a number of states. As such, GetCoins has the right to possess those ATMs.

90.     Defendant intentional took the ATMs without authority or permission when he, as a GetCoins' employee, secured leases for the ExtraSpace storage under his own name, rather than under GetCoins' name, causing GetCoins to unwittingly place fifty-eight ATMs in ExtraSpace units in leases under Defendant's name instead of GetCoins' name.

## COUNT VII
### Injunction

91.     GetCoins incorporates and realleges the allegations in the foregoing paragraphs as though alleged fully herein.

92.     Defendant through his actions described above, has used GetCoins' trade secrets and confidential business information; intentionally accessed and damaged GetCoins' RAS without authorization; breached several provisions in his Agreement including by way of example, inducing GetCoins' Vendors to disrupt their relationship with GetCoins; and unlawfully converted and detained GetCoins' property.

93.     If Defendant is not enjoined from engaging in the above outlined behavior, GetCoins will suffer irreparable harm because Defendant will continue to have unauthorized access to GetCoins containing trade secrets, confidential business and financial information, and property.

94.     Defendant will not suffer any hardship if enjoined from returning GetCoins' confidential and trade secret information and returning GetCoins' property because that conduct is prohibited by law.

95.     The public interest would be advanced by enjoining Defendant's actions set forth herein because an injunction would prevent continued violation of the law.

96.     If Defendant is not enjoined, Defendant is likely to continue the illegal conduct.

## PRAYER

WHEREFORE, Plaintiff GetCoins respectfully requests that a judgment be entered in its favor and against Defendant as follows:

a.  Permanent Injunction, including an order enjoining Defendant from:

    i.    using, disclosing, transferring, or transmitting (for any purpose) any confidential or trade secret information belonging to GetCoins;

    ii.    using GetCoins' Dashboard, including the information contained therein (such as Vendor contact information, email address, store address, phone number);

    iii.    violating the terms of Defendant's Agreement, including without limitation withholding and/or refusing to return Company documents and property, contacting Vendors, disclosing confidential information and trade secrets, and converting GetCoins' ATMs;

    iv.    accessing, manipulating, destroying, deleting, erasing, or modifying GetCoins internal systems and causing such systems to go offline resulting in financial harm and loss of sales to GetCoins;

b.  Award GetCoins actual damages;

c.  Award GetCoins consequential damages;

d.  Award GetCoins its attorney's fees;

e.  Assess punitive damages against Defendant; and

f.  Award GetCoins all further and other relief at law and in equity to which GetCoins is entitled.

October 12, 2023               Respectfully Submitted,

                                    /s/ Daniel Trujillo Esmeral

Daniel Trujillo Esmeral, Esq. (No. 21615)
**OFFIT KURMAN, PA**
7501 Wisconsin Avenue, Suite 1000W
Bethesda, Maryland 20814
Telephone: (240) 507-1763
Fax: (202) 507-1735
Daniel.Trujillo@offitkurman.com

4878-6109-0181, v. 4