# Exhibit A

## CUSTOMER AND EMPLOYEE NON-SOLICITATION, AND CONFIDENTIALITY AGREEMENT

This Customer and Employee Non-Solicitation, and Confidentiality Agreement ("Agreement"), effective as of the final date listed on the Signature Page below (the "**Effective Date**"), is made by and between Evergreen ATM, LLC doing business as "GetCoins™, a Nevada Limited Liability Company ("**Company**"), and Andrey Ryabchenko ("**Employee**"). In consideration of Employee's employment with the Company and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Employee agrees as follows:

1. **Background.** Company is a federally licensed money services business, and engages in the business of operating a crypto currency exchange, including the purchase and sale of various crypto currencies dispensed through kiosks that use Company's proprietary compliance and crypto currency software ("**Business**"). Company owns, controls and has exclusive access to Confidential and Proprietary Information (as defined in Section 2 below) concerning its operations, methods, and accumulated experience incidental to the operations and development of its Business. Employee acknowledges that by executing this Agreement and by reason of Employee's employment by the Company, Employee will receive specialized training with respect to the Business and come into possession of, have knowledge of, and contribute to, Confidential and Proprietary Information and may establish substantial goodwill on behalf of the Company. Employee further acknowledges and agrees that the Company's Confidential and Proprietary Information is valuable, is not known to others in the relevant industry, and gives the Company a substantial competitive advantage.

2. **Definition of "Confidential and Proprietary Information".** The term "Confidential and Proprietary Information" shall mean any and all confidential and/or proprietary knowledge, data, or information of the Company. By way of illustration but not limitation, Confidential and Proprietary Information includes tangible and intangible information relating to formulations, products, processes, know-how, designs, formulas, methods, developmental or experimental work, data, drawings, worksheets, blueprints, concepts, samples, inventions, improvements, discoveries, research, marketing plans, business plans, budgets, unpublished financial statements, licenses, technology functions, vendor names and services provided, prices, costs, prospective and existing kiosk locations, planned expansion information, compliance thresholds, suppliers, customers and personnel. All Confidential and Proprietary Information owned, developed, or acquired by the Company shall remain the sole and exclusive property of the Company. Confidential and Proprietary Information also includes any information described above that the Company obtains from its clients or any other third party and that the Company treats as confidential, whether or not owned or developed by the Company.

3. **Non-disclosure of Confidential and Proprietary Information.**

    (a)   **Non-disclosure.** At all times during and after Employee's employment with the Company, Employee will hold in strictest confidence and will not disclose, disseminate, use, lecture upon, or publish any of the Company's Confidential and Proprietary Information (defined in Section 2 above), except as such disclosure, use, or publication may be required in connection with Employee's work for the Company, or

1

unless the CEO of the Company expressly authorizes such in writing. Employee will obtain Company's written approval before publishing or submitting for publication any material (*i.e.*, written, verbal, or otherwise) that relates to Employee's work at the Company and/or incorporates any Confidential and Proprietary Information. Employee hereby assigns to the Company any rights Employee may have or acquire in such Confidential and Proprietary Information and recognizes that all Confidential and Proprietary Information is and shall be the sole property of the Company and its assigns.

**(b)** **Return of Company documents.** Upon termination of Employee's employment with the Company, or upon the Company's earlier request, Employee will promptly (i) deliver to the Company any and all drawings, notes, memoranda, specifications, devices, formulas, and documents, together with all copies thereof, and any other material (whether in hard copy, digitally stored, or in any other format or medium) containing or disclosing any Confidential and Proprietary Information of the Company (and will cooperate with the Company to ensure that no electronic copies thereof have been retained in or are retrievable from any personal property not belonging to the Company), and (ii) return all Company property issued to Employee or otherwise in Employee's possession or control, including, without limitation, computers and computer equipment, phones and other mobile devices, and digital storage devices. Employee further agrees that any property situated on the Company's premises and owned by the Company, including, but not limited to, disks and other storage media, filing cabinets or other work areas, is subject to inspection by the Company personnel at any time with or without notice. Prior to leaving, Employee will cooperate with the Company in completing and signing the Company's termination statement.

**(c)** **No interference with NLRA or reporting rights.** This Section 3, and all other provisions in this Agreement, are not intended to interfere with or restrain employee communications regarding wages, hours, or other terms and conditions of employment or to otherwise interfere with any rights Employee has under the National Labor Relations Act. This Section 3, and all other provisions in this Agreement, do not prohibit Employee from reporting possible legal violations to the government or from making other disclosures to the government that are protected under federal or state whistleblower provisions.

**(d)** **Defend Trade Secrets Act.** Employee is advised that pursuant to the Defend Trade Secrets Act an individual will not be held criminally or civilly liable under any federal or state trade secret law for the disclosure of a trade secret that (A) is made (i) in confidence to a federal, state, or local government official, either directly or indirectly, or to an attorney, and (ii) solely for the purpose of reporting or investigating a suspected violation of law, or (B) is made in a complaint or other document filed in a lawsuit or other proceeding if such filing is made under seal. Further, an individual who files a lawsuit alleging retaliation by an employer for reporting a suspected violation of law may disclose the trade secret to the individual's attorney and use the trade secret information in the court proceeding if the individual (1) files any document containing the trade secret under seal and (2) does not otherwise disclose the trade secret, except pursuant to court order. EMPLOYEE UNDERSTANDS THAT ANY DISCLOSURE BY EMPLOYEE OF THE COMPANY'S TRADE SECRETS NOT

DONE IN GOOD FAITH CONSISTENT WITH THE ABOVE SHALL SUBJECT EMPLOYEE TO SUBSTANTIAL DAMAGES, INCLUDING PUNITIVE DAMAGES AND ATTORNEY'S FEES. Employee understands that a breach of this Agreement constitutes a breach of the Nevada Uniform Trade Secrets Act, subjecting Employee to criminal penalties and equitable relief.

(e) **Legally Compelled Disclosure.** Nothing in this Agreement is intended to prohibit disclosure by Employee of information that is required to be disclosed pursuant to any applicable law, court order, or other governmental body or administrative or other agency. Employee agrees to notify the Company as promptly as reasonably practicable after Employee receives a request for any such disclosure of Confidential and Proprietary Information and agrees, upon request by the Company, to reasonably cooperate (at the Company's expense) with the Company's lawful efforts to challenge or limit such disclosure.

4. **Non-solicitation.** Employee agrees to the following non-solicitation covenants during Employee's employment with the Company and for one year after employment is terminated for any reason by either party:

    (a) **Customer non-solicitation.** Employee shall not, whether directly or indirectly, solicit, communicate with or otherwise contact any of the Company's customers, retail locations (lessors) or actively sought prospective customers, retail locations (lessors) with whom Employee had material contact during Employee's employment with the Company, for the purpose of conducting any business with them which is substantially similar to any business conducted or anticipated to be conducted by the Company during Employee's employment with the Company. "Material contact" means (1) actual contact with customers, such as through the provision of services or sales visits or calls, (2) coming to know confidential and/or proprietary information about a Company customer, such as by obtaining pricing and sales information, or (3) directing or coordinating other employees in calling, servicing, or soliciting customers.

    (b) **Employee non-solicitation.** Employee shall not, directly or indirectly, solicit or induce—or encourage another entity or person to solicit or induce—any person employed by the Company or any person retained by the Company as an independent contractor to terminate an employment relationship or contract with the Company or to obtain employment with another entity or person besides the Company.

    (c) **Interference with business.** Employee shall not, whether directly or indirectly, undertake any act with the intent to disrupt, impair or interfere with the business of the Company in any way, whether by way of interfering with or disrupting its relationships with customers, agents, representatives, contractors, or suppliers, or otherwise.

5. **Non-competition provisions.**

    (a) **Non-competition.** During Employee's employment, Employee will not, directly or indirectly, on Employee's own behalf or on behalf of or in conjunction with any person, business, firm, company, or other entity, set up, join, become employed by, be engaged in, or provide any advice or services to, any enterprise (including, without limitation, any corporation, partnership, proprietorship, or other venture or form of business

3

entity) which competes with the Company. Furthermore, for two years following the termination of Employee's employment, Employee will not, directly or indirectly, on Employee's own behalf or on behalf of or in conjunction with any person, business, firm, company, or other entity, set up, join, become employed by, be engaged in, or provide any advice or services to, any enterprise (including, without limitation, any corporation, partnership, proprietorship, or other venture or form of business entity) within the crypto currency virtual exchange services or crypto currency kiosk operators, and that engages in the same business as:

(i) Any business of the Company: (1) with which Employee was actively involved at any time during the last two years of Employee's employment with the Company, or (2) about which Employee obtained or knew Confidential and Proprietary Information at any time during the last two years of Employee's employment with the Company.

(b) **Passive investment.** Nothing in this Section 5 shall be deemed to prevent Employee from purchasing or owning, directly or beneficially, as a passive investment, less than 25% of any class of the publicly traded securities of any corporation.

6. **Protectable interests.** Employee acknowledges and agrees that (1) complying with the restrictions contained in this Agreement will not prevent Employee from earning a living, and (2) such restrictions are necessary and reasonable (including, without limitation, with respect to geographic scope and duration) to protect the Company's valid interests (including, without limitation, relationships with retail locations, customers, goodwill, the protection of trade secrets and other Confidential and Proprietary Information, protection from unfair competition, and other protectable interests).

7. **No conflicting obligation.** Employee represents that Employee's performance of all the terms of this Agreement and as an employee of the Company does not and will not breach any agreement to keep in confidence information acquired by Employee in confidence or in trust prior to Employee's employment by the Company. Employee represents and agrees that Employee has not entered into and will not enter into, any agreement either written or oral in conflict herewith.

8. **Legal and equitable remedies.** Employee hereby agrees and acknowledges that any breach or threatened breach of this Agreement by Employee will result in irreparable harm to the Company for which there will be no adequate remedy at law. Consequently, in the event of such breach or attempted breach, the Company shall be entitled to receive an injunction, without bond and without proof of actual damages, to prevent any further breach of this Agreement by Employee and/or obtain other specific performance or equitable relief necessary to enforce the Company's rights under this Agreement, to the fullest extent permissible under applicable law, in addition to all other remedies available in law or at equity.

9. **General Provisions.**

    (a) **Governing Law.** The validity, interpretation, construction and performance of this Agreement is governed by the laws of Nevada. Employee hereby expressly consents to the personal jurisdiction of the state and federal courts located in [county] [state] for any lawsuit filed there against Employee by the Company arising from or related to this Agreement.

    (b) **Waiver.** failure to enforce any provision of this Agreement shall not be deemed a waiver of that provision or any other provision. No waiver by either party at any time of any breach of this Agreement by the other party will be deemed a waiver of any preceding or succeeding breach nor shall it be construed as a waiver of any other provisions or conditions of this Agreement. No waiver of any provision of this Agreement shall be effective unless made in writing signed by Employee and, on behalf of the Company, by John Simonyan or his designated representative, and such waiver shall be effective only in the specific instance and for the specific purpose stated in the writing. The Company shall not be required to give notice to enforce strict adherence to all terms of this Agreement.

    (c) **Entire agreement.** This Agreement sets forth the final, entire, and exclusive understanding of the parties with respect to the subject matter hereof and supersedes and merges all prior agreements of the parties, whether oral or written. No provision of this Agreement may be amended, modified, waived or discharged unless such amendment, modification, waiver or discharge is agreed to in writing, and is signed by Employee and, on behalf of the Company, by John Simonyan or his designated representative.

    (d) **Severability.** If any provision, term, covenant or obligation of this Agreement, or its application, is held invalid, unenforceable, or unlawful, such invalidity, unenforceability or unlawfulness, shall not affect the other provisions, terms, covenants or obligations of this Agreement, or their application, which all shall remain valid and enforceable in full force and effect to the extent permitted by law.

    (e) **No right to employment.** Nothing in this Agreement shall be interpreted to confer to Employee any right to be employed by the Company or otherwise interfere in any way with Employee's or Company's right to terminate Employee's employment for any reason or no reason, with or without cause, in accordance with any applicable agreement and governing law.

    (f) **Tolling.** If Employee violates the Agreement, the period of restriction as set forth above in Sections 4 and 5 is tolled during any period of Employee's violation and all restrictions shall automatically be extended by a period of time equal to the period of time the Employee is in violation of any such restrictions, if the Company seeks enforcement after learning of Employee's violation.

    (g) **Successors and assigns.** This Agreement will be binding upon Employee's heirs, executors, administrators, and other legal representatives and will be for the benefit of the Company, its successors, and its assigns.

    (h) **Survival.** The provisions of this Agreement shall survive the assignment of this Agreement by the Company to any successor in interest or other assignee.

(i) **Section headings.** The section headings appearing in this Agreement have been inserted for the purpose of convenience and reference only and shall not limit or affect the meaning or interpretation of this Agreement in any way whatsoever.

(j) **Notices.** Any notices required or permitted hereunder shall be given to the appropriate party at the address specified below (or at such other address as the party shall specify in writing by notice delivered in accordance with this Section 9(j)). Such notice shall be deemed given upon personal delivery to the appropriate address or, if sent by certified or registered mail, 10 days after the date of mailing.

(k) **Notification of new employer.** In the event that Employee leaves the employ of the Company, to the extent permitted by law, Employee hereby consents to the notification of Employee's new employer of Employee's rights and obligations under this Agreement, and acknowledges that the Company may send a copy or a redacted copy of this Agreement to Employee's new employer.

[Continued on next page – Signatures follow]

## SIGNATURE PAGE

Employee has carefully read the Agreement and understands and accepts all of its terms. The parties have duly executed this Agreement effective as of the Effective Date.

ACCEPTED AND AGREED TO:

_Andrey Ryabchenko_
Signature

Andrey Ryabchenko
Print Name of Employee

Dated: 1/27/2022

ACCEPTED AND AGREED TO:

Evergreen ATM, LLC ("GetCoins™")

By: _John [signature]_
Signature of Authorized Officer

John Simonyan
Printed Name

Its: _Managing Member_
Title of Authorized Officer

Dated: 1/27/2022

7